IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

---

DANIEL HIMMEL, Individually and on
Behalf of All Others Similarly Situated,

    Plaintiff,

 vs.

BUCYRUS INTERNATIONAL, INC., et al.,

    Defendants.

Case No. 10-C-1104

<u>CLASS ACTION</u>

---

CITY OF STERLING HEIGHTS POLICE &
FIRE RETIREMENT SYSTEM, Individually
and on Behalf of All Others Similarly
Situated,

    Plaintiff,

 vs.

BUCYRUS INTERNATIONAL, INC., et al.,

    Defendants.

Case No. 10-C-1106

<u>CLASS ACTION</u>

---

EDMUND J. IMPENS, Individually and on
Behalf of All Others Similarly Situated,

    Plaintiff,

 vs.

BUCYRUS INTERNATIONAL, INC., et al.,

    Defendants.

Case No. 10-C-1179

<u>CLASS ACTION</u>

---

**DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS
<u>THE SECOND AMENDED COMPLAINT</u>**

Lead Plaintiff City of Sterling Heights Police & Fire Retirement System ("Plaintiff") has amended its complaint for a second time. As the Court will recall, Plaintiff was previously before the Court in January 2011, seeking a preliminary injunction to prevent the shareholders of Bucyrus International, Inc. ("Bucyrus" or the "Company") from voting with respect to the proposed merger of Bucyrus with Caterpillar Inc. ("Caterpillar") (the "Merger"). After the Court denied that motion, (10-cv-1106, Dkt. 61), on January 20, 2011, Bucyrus's shareholders overwhelmingly approved the Merger.[1] The Merger closed on July 8, 2011.

In its Second Amended Complaint ("SAC"), Plaintiff has now dropped any claim for equitable relief and instead exclusively seeks monetary damages based on alleged breaches of fiduciary duty and alleged misrepresentations in connection with the Merger. In particular, Plaintiff contends that alleged misconduct by the Board of Directors of Bucyrus (the "Individual Defendants") caused the Merger consideration to "substantially undervalue[] Bucyrus" and claims that the Merger "was merely an attempt by Caterpillar to acquire Bucyrus for a bargain during a temporary downturn in the economy." (SAC ¶ 54.) Plaintiff seeks damages from Caterpillar as well, claiming that Caterpillar "aided and abetted" the Individual Defendants' alleged breaches of fiduciary duty by entering into the Merger. (Id. ¶ 96.) Furthermore, Plaintiff seeks damages from both the Individual Defendants and Caterpillar (collectively, the "Defendants") for allegedly omitting information from the 150-page Definitive Proxy Statement provided to shareholders (the "Definitive Proxy" or "Proxy").

For the reasons discussed below, Plaintiff's allegations regarding purported breaches of fiduciary duty under Delaware law are plainly insufficient, particularly in light of the exculpatory provision in Bucyrus's certificate of incorporation, which was authorized by Delaware law and

---

[1] Bucyrus International, Inc., Form 8-K (Jan. 20, 2011) (noting final voting results as follows: For: 59,822,881; Against: 141,808; Abstain: 12,461).

designed to foreclose precisely the sorts of claims for monetary relief that Plaintiff alleges here. Plaintiff's disclosure claims are equally devoid of merit under both Delaware and federal law. These disclosure claims fail because the purported misstatements and omissions are immaterial and because, not surprisingly, Plaintiff alleges no facts to indicate that it suffered any loss whatsoever as a result of these purported violations. Finally, Plaintiff's "aiding and abetting" claims are pure makeweight, are unsupported by any well-pleaded facts, and collapse in the absence of any well-pleaded underlying breach of fiduciary duty.

In short, having failed in its eleventh-hour effort to frustrate the shareholder vote, Plaintiff's continued pursuit of claims for post-closing money damages is entirely without merit. Indeed, Plaintiff—like every other Bucyrus shareholder—chose *not* to pursue its right to seek an appraisal of its shares in the event that it believed the consideration offered in the Merger was inadequate. Having chosen *not* to seek appraisal, Plaintiff is improperly attempting to use this Court to pursue meritless claims. The Second Amended Complaint should be dismissed.

## **INTRODUCTION**

Bucyrus was a publicly traded Delaware corporation that designed and manufactured mining equipment for the surface and underground mining industries. (SAC ¶ 13.) Caterpillar is a publicly traded Delaware corporation that manufactures construction and mining equipment, diesel and natural gas engines, industrial gas turbines, and diesel-electric locomotives. (*See* id. ¶¶ 24, 75.) On November 15, 2010, Bucyrus announced that it had entered into the Merger Agreement with Caterpillar, pursuant to which Caterpillar would purchase all of Bucyrus's outstanding shares for $92 per share in cash (id. ¶ 2), which represented an implied premium of 32% over Bucyrus's November 12, 2010 closing share price.

Four days after the Merger Agreement was announced, Plaintiff filed an action in the State of Wisconsin, Circuit Court, Milwaukee County, Case No. 10-CV-019868. Plaintiff's was the fourth of five putative class actions filed against the Defendants in Wisconsin, and alleged breach of fiduciary duties against the Individual Defendants and aiding and abetting against Bucyrus and Caterpillar. On December 8, 2010, Caterpillar and Badger Merger Sub, Inc. ("Badger") filed Notices of Removal in the four Wisconsin state court cases and removed them to this Court.[2] (*See* 10-cv-1106, Dkt. 1.)

On December 8, Bucyrus filed a Preliminary Proxy Statement ("Preliminary Proxy") pursuant to Section 14(a) of the Securities Exchange Act of 1934, and on December 22, Bucyrus filed the Definitive Proxy.[3] On December 20, 2010, Plaintiff filed an amended complaint (the "Amended Complaint"), again alleging breach of fiduciary duty against the Individual Defendants and aiding and abetting against Bucyrus and Caterpillar, and adding proxy claims against the Individual Defendants and Caterpillar for alleged violations of §14(a) of the 1934 Act and for an alleged violation of §20(a) of the 1934 Act. (*See* 10-cv-1106, Dkt. 15.) Bucyrus and the Individual Defendants, and Caterpillar and Badger filed motions to dismiss the Amended Complaint on January 3, 2011. (10-cv-1106, Dkt. 39, 43.) On January 10, 2011, Plaintiff moved for a preliminary injunction. (10-cv-1106, Dkt. 47.) A hearing was held on Plaintiff's motion on January 18, 2011. (10-cv-1106, Dkt. 63.) In an oral opinion, this Court denied Plaintiff's motion the next

---

[2] The other four cases that were removed to this Court were *Greenberg, et al. v. Bucyrus International, Inc., et al.,* Case No. 10-C-1103, *Himmel, et al. v. Bucyrus International, Inc., et al.,* Case No. 10-C-1104, *Turberg, et al. v. Bucyrus International, Inc., et al.,* Case No. 10-C-1105, and *Impens, et al. v. Sullivan, et al.,* Case No. 10-C-1179.

[3] A copy of the Definitive Proxy is attached as Exhibit A. Even though Plaintiff did not attach the Definitive Proxy to the Second Amended Complaint, this Court may consider it in its entirety for two reasons. First, a defendant may reference key documents quoted in the complaint without converting a motion to dismiss into a motion for summary judgment. *Duferco Steel Inc. v. M/V Kalisti,* 121 F.3d 321, 324 n.3 (7th Cir. 1997). Second, the Court may take judicial notice of the contents of the Proxy as it was filed with the United States Securities and Exchange Commission and is a publicly available document. "In ruling on a 12(b)(6) motion, a district court may take judicial notice of matters of public record without converting the 12(b)(6) motion into a motion for summary judgment." *Anderson v. Simon,* 217 F.3d 472, 474-75 (7th Cir. 2000).

day (10-cv-1106, Dkt. 61 (Order Denying Plaintiff's Motion for Preliminary Injunction), Dkt. 73 (10-cv-1106, Transcript of Decision on Preliminary Injunction Hearing)).  The Merger closed on July 8, 2011.  (SAC ¶ 75.)

Although the Proxy explained Plaintiff's and every Bucyrus shareholder's right to seek appraisal if they believed the shares were worth more than $92 (*see* Ex. A Annex C), neither Plaintiff nor any other shareholder sought appraisal.[4]

On September 23, 2011, this Court consolidated the five cases pending before it and denied without prejudice Defendants' motions to dismiss.  (10-cv-1104, Dkt. 57.)  After consolidation, the plaintiffs in two of the actions stipulated to dismissals of their claims with prejudice.  (10-cv-1104, Dkt. 58.)

Plaintiff was appointed as lead plaintiff on November 8, 2011 and on November 29, 2011 filed the Second Amended Complaint, which seeks money damages for alleged breaches of fiduciary duty against the Individual Defendants, alleged aiding and abetting breach of fiduciary duty against Caterpillar, and alleged violations of §14(a) and § 20(a) of the 1934 Act against the Individual Defendants and Caterpillar.  (10-cv-1104, Dkt. 62, 63.)

The Second Amended Complaint exclusively seeks monetary damages based on three sets of allegations:  (1) that the Individual Defendants breached their fiduciary duties during the merger negotiation process allegedly by securing what Plaintiff characterizes as "insider benefits," by failing to shop the Company, by agreeing to deal protection measures in the Merger Agreement, by not including certain protections against regulatory risk that Plaintiff believes should have been included, and by not securing what Plaintiff believes was a high enough price per share; (2) that Caterpillar violated federal law and that the Individual Defendants violated

---

[4] Plaintiff's counsel acknowledged the availability of the appraisal remedy during the preliminary injunction hearing.  (PI Hr'g Tr. 6:23-7:2, Jan. 18, 2011.)

federal law and breached their fiduciary duties by omitting information from the Proxy; and (3) that Caterpillar aided and abetted the Individual Defendants' alleged breaches of fiduciary duty by entering into the Merger Agreement. None of these allegations states an actionable claim.

*First*, Bucyrus's certificate of incorporation includes an exculpatory provision pursuant to 8 Del. C. § 102(b)(7),[5] which bars recovery of monetary damages for breaches of fiduciary duty absent disloyalty or bad faith. (*See* Ex. B at 4.) The facts that Plaintiff alleges regarding the Individual Defendants' negotiations with Caterpillar do not plead that the Individual Defendants acted improperly, let alone that they acted disloyally or in bad faith. The Second Amended Complaint contains only conclusory assertions of wrongdoing, which are wholly inadequate under governing pleading standards.

*Second*, Plaintiff fails to state a disclosure claim. The exculpatory provision in Bucyrus's certificate of incorporation bars Plaintiff's disclosure claim under Delaware fiduciary duty law because, as noted above, Plaintiff has failed to plead facts showing disloyalty or bad faith. Plaintiff has also failed to plead that any of the alleged omissions from the Proxy are material, which warrants dismissal of both the Delaware and federal disclosure claims. Furthermore, Plaintiff has not pled any actual economic loss based on alleged omissions from the Proxy, which provides another independent basis for dismissing Plaintiff's disclosure claims under both Delaware and federal law.

*Third* and finally, Plaintiff's aiding and abetting claim against Caterpillar fails as a matter of law. As a preliminary matter, Plaintiff has failed to state a claim against the Individual Defendants for breach of fiduciary duty and thus necessarily has failed to state a claim for aiding and abetting such a breach. Even beyond this most basic problem, however, Delaware courts

---

[5] Bucyrus's certificate of incorporation is attached hereto as Exhibit B.

routinely dismiss aiding and abetting claims based on nothing more than a buyer's arms-length negotiation of a transaction that shareholders of the seller claim is inadequate. Because the sole basis for Plaintiff's aiding and abetting claim against Caterpillar is that Caterpillar entered into the Merger Agreement, that claim must fail.

## ARGUMENT

A complaint is subject to dismissal if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "[A] plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation marks omitted); *see also Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). As the Seventh Circuit has explained, a plaintiff "is not to be allowed to extort a settlement by reason of the defendant's having to incur heavy litigation expenses if the suit proceeds beyond the pleading stage even if it is a groundless suit." *Beck v. Dobrowski*, 559 F.3d 680, 682 (7th Cir. 2009). As explained below, the factual allegations in the Second Amended Complaint do not state a claim for relief, and Plaintiff's conclusory assertions do not meet the pleading standard set forth in *Twombly* and *Iqbal*. This Court should dismiss the Second Amended Complaint.

## I.   PLAINTIFF'S BREACH OF FIDUCIARY DUTY CLAIM FAILS.

In claiming that the Individual Defendants breached their fiduciary duties to Bucyrus's shareholders, Plaintiff takes issue with the process by which the Individual Defendants

negotiated the Merger as well as certain terms of the Merger Agreement itself.[6]  However, Delaware law expressly protects boards of directors from the post-closing claims for money damages that Plaintiff attempts to make here.

Pursuant to Section 102(b)(7) of the Delaware General Corporation Law, a Delaware corporation may include an exculpatory provision in its certificate of incorporation that bars claims for monetary liability against directors for breaches of the duty of care.  8 Del. C. § 102(b)(7).  Because Bucyrus's certificate of incorporation exculpates the Individual Defendants from any claims for money damages arising from alleged breaches of their duty of care (*see* Ex. B at 4), to survive dismissal the Second Amended Complaint "must state a nonexculpated claim, *i.e.*, a claim predicated on a breach of the directors' duty of loyalty or bad faith conduct." *In re Alloy, Inc*., 2011 WL 4863716, at *7 (Del. Ch. Oct. 13, 2011).  As discussed below, Plaintiff has failed to adequately plead that the Individual Defendants acted disloyally or in bad faith, and thus, its breach of fiduciary duty claim fails as a matter of law.  *See id*. at *12 (granting defendants' motion to dismiss fiduciary duty claims where the "[c]omplaint fails to allege specific, well-pleaded facts that would give rise to a reasonably conceivable set of circumstances under which Plaintiffs could recover on a claim that, in negotiating and approving the Merger, the Alloy directors failed to act loyally or in good faith."); *see also In re NYMEX S'holder Litig*., 2009 WL 3206051, at *6 (Del. Ch. Sept. 30, 2009) (dismissing the shareholders' substantive merger claims for failure to state a claim in light of a Section 102(b)(7) exculpation provision.) (citation omitted).

---

[6] Plaintiff also alleges that the Individual Defendants breached their fiduciary duties by failing to provide all material information to shareholders in the Proxy.  (SAC ¶ 90.)  Defendants address all of Plaintiff's disclosure allegations—including those under Delaware fiduciary duty law as well as those under federal law—in Section II below.

**A.    Plaintiff Fails to Adequately Plead that the Individual Defendants Acted Disloyally.**

As an initial matter, to state a claim for breach of the duty of loyalty, Plaintiff must plead facts from which the Court can reasonably infer that a *majority* of the Individual Defendants either (i) "stood on both sides of the merger or were dominated and controlled by someone who did" or (ii) "failed to act in good faith, i.e., where a fiduciary intentionally fails to act in the face of a known duty to act, demonstrating a conscious disregard for his duties."  *In re NYMEX S'holder Litig.*, 2009 WL 3206051, at *6 (internal quotation marks omitted).  Merely alleging facts showing that a few of the Individual Defendants acted disloyally is insufficient.  *Id.*; *see also In re Alloy, Inc.*, 2011 WL 4863716, at *9 ("Plaintiffs have alleged that, at most, four of Alloy's nine directors had any interest in the Merger or otherwise lacked independence from those who did.  Therefore, Plaintiffs' allegations are insufficient to support a reasonable inference that a *majority* of Alloy's board was interested or lacked independence.") (emphasis added).  Furthermore, in order to adequately plead pecuniary self-interest, Plaintiff must set forth allegations that "allow the Court to infer that the interest was of a sufficiently material importance, in the context of the director's economic circumstances, as to have made it improbable that the director could perform her fiduciary duties without being influenced by her overriding personal interest."  *In re Alloy, Inc.*, 2011 WL 4863716, at *9 (internal quotation marks omitted).

Plaintiff's allegations here are clearly insufficient.  The only allegations in the Second Amended Complaint bearing on the duty of loyalty are that:

> defendants took pains to structure the Takeover so that it would preserve a role for management going forward in the combined company, and enable certain Company insiders, including members of senior management and the Board, to accelerate and monetize otherwise illiquid equity interests in the Company and

secure other material insider benefits, including change-in-control payments, or "golden parachutes."

(SAC ¶¶ 4, 48.)  These allegations do not plead a breach of the duty of loyalty for several reasons.

*First*, although Plaintiff conclusorily alleges that the Merger would "preserve a role for management going forward" and describes alleged benefits received by "members of senior management and the Board" collectively (SAC ¶¶ 4, 48), all that is relevant with respect to Plaintiff's disloyalty claim is what the *Individual Defendants* received through the Merger. Allegations regarding what management received are inapposite.  *See Globis Partners, L.P. v. Plumtree Software, Inc.*, 2007 WL 4292024, at *8 n.58 (Del. Ch. Nov. 30, 2007) ("[The plaintiff] also highlights the compensation received by several non-Defendant Plumtree executives.  The Court does not see the relevance of these non-Defendants or the benefits they received.") (citations omitted).

Here, only one of the Individual Defendants—Mr. Sullivan—was a member of management, and as Plaintiff's counsel acknowledged at the preliminary injunction hearing, Mr. Sullivan was the only Individual Defendant not considered to be independent:

> THE COURT:  You keep referring to they might be getting jobs, and so forth.  Do you have something suggesting that members of the Board are going to get jobs?  I read in the Proxy statement several things.  One is, there's only one person, Mr. Sullivan, who is not considered to be independent.  And there's no indication that I recall from the Proxy statement that another member of the Board who was part of the decision making process respecting the merger was going to receive anything other than cashing out of their stock and options.  And with respect to the executive committee, they would receive the benefits that they would otherwise be entitled to receive under the terms of their employment.  Is there something else that you know that is not obvious from what I've just mentioned?  Or what was stated in the Proxy statement?

> MR. O'BRIEN: No. Everything you say, Your Honor, is accurate.

(PI Hr'g Tr. 22:14-23:4 (10-cv-1106, Dkt. 72).)  Allegations regarding benefits that Mr. Sullivan may have received as part of the Merger do not establish anything with respect to the rest of the Individual Defendants, much less the *majority* of the Individual Defendants.  *See Globis Partners, L.P.*, 2007 WL 4292024, at *9 (finding that even assuming that the plaintiff established that one of six directors was interested in the transaction, the plaintiff had failed to plead sufficient facts supporting a duty of loyalty claim); *see also In re Lukens Inc. S'holders Litig*., 757 A.2d 720, 730 (Del. Ch. 1999) ("The only director alleged to benefit under these payments was Van Sant.  Without alleging that Van Sant dominated or controlled a majority of the board, there is no basis to say that the board as a whole lacked independence.").[7]

     *Second*, Plaintiff does not specify the types of "interests" at issue in its allegation that the Merger enabled certain Board members to "accelerate and monetize otherwise illiquid interests in the Company."  (SAC ¶¶ 4, 48.)  In this regard, Delaware courts have repeatedly held that vesting of directors' options does not establish a conflict of interest and that allegations of the monetization of equity interests does not plead disloyalty.  *See Globis Partners, L.P.*, 2007 WL 4292024, at *8 ("The accelerated vesting of options does not create a conflict of interest because the interests of the shareholders and directors are aligned in obtaining the highest price."); *Krim v. ProNet, Inc*., 744 A.2d 523, 528 & n.16 (Del. Ch. 1999) ("The vesting of options does not create a conflict as a high exchange ratio for ProNet shares benefits the option-holding directors as much as, if not more than, the regular stockholders.").  Thus, even if Plaintiff had adequately alleged that the Individual Defendants were able to "accelerate" and "monetize" otherwise illiquid equity interests, this does not state a claim for breach of the duty of loyalty.

---

[7] Mr. Sullivan did not receive an ongoing position as part of the Merger.  His interests were fully aligned with the goal of maximizing the price per share of Bucyrus stock.

*Third*, and finally, Plaintiff has entirely failed to allege which Individual Defendants received any of the alleged "insider benefits" asserted, as is required to adequately allege that those purported "benefits" were material to a given Board member. *See, e.g., Cinerama, Inc. v. Technicolor, Inc.*, 663 A.2d 1156, 1167 (Del. 1995) (requiring an independent judicial determination regarding the materiality of a *given* director's self-interest). And having made no such allegations as to any Individual Defendant, Plaintiff obviously has not adequately alleged that a *majority* of the Individual Defendants received such benefits. Plaintiff's duty of loyalty allegations are clearly insufficient to establish a breach of the duty of loyalty.

**B.** **Plaintiff Fails to Adequately Plead that the Individual Defendants Acted in Bad Faith.**

Plaintiff also does not adequately plead bad faith. As Delaware courts have recognized, "'there is a vast difference between an inadequate or flawed effort to carry out fiduciary duties and a conscious disregard for those duties.'" *In re Alloy*, 2011 WL 4863716, at *10 (quoting *Lyondell Chem. Co. v. Ryan*, 970 A.2d 235, 243 (Del. 2009)). To plead a claim that the Individual Defendants acted in bad faith, Plaintiff must show that the Individual Defendants' decision to approve the merger was "'so far beyond the bounds of reasonable judgment that it seems essentially inexplicable on any ground other than bad faith.'" *Id*. Plaintiff's allegations fall far short of this standard.

1. <u>Plaintiff's Allegations Regarding Other Potential Bids Are Not Actionable.</u>

Plaintiff asserts that the Individual Defendants breached their fiduciary duties by "fail[ing] to shop the Company to other potential buyers" (SAC ¶ 5) and by agreeing to certain deal protection terms in the Merger Agreement (id. ¶ 6). However, neither of these actions is *per se* improper under Delaware law, nor has Plaintiff alleged facts to show that the Individual

12

Defendants' decision-making was so "beyond the bounds of reasonable judgment" as to support an inference of bad faith.

Indeed, Delaware courts have repeatedly held that there is no "blueprint" that must be followed when a board decides to sell the corporation. *See, e.g., In re CompuCom Sys. S'holders Litig.*, 2005 Del. Ch. LEXIS 145, at *20 (Del. Ch. Sept. 29, 2005). In keeping with this flexible approach—and contrary to Plaintiff's erroneous assertion that the Individual Defendants "had a duty" to "have conducted at least some form of an auction process" (SAC ¶ 62)—Delaware courts have repeatedly recognized that there is no *per se* requirement that a board auction the company during a merger negotiation process. *See In re Dollar Thrifty S'holder Litig.*, 14 A.3d 573, 605 (Del. Ch. 2010) (pre-merger agreement auction not required where board "engaged in a reasoned consideration of the relevant factors and selected a reasonable course of action"); *In re Fort Howard Corp. S'holders Litig.*, 1988 WL 83147, at *1, 13-14 (Del. Ch. Aug. 8, 1988) (pre-merger agreement auction not required where directors' mechanism for gathering information on alternatives puts board in position to exercise fully informed judgment). As the Proxy clearly disclosed, in determining not to shop the Company, the Individual Defendants consulted with Bucyrus management, with Deutsche Bank, and with UBS regarding the likelihood that other potential acquirors would emerge at the valuation levels that Caterpillar was prepared to pay. (Ex. A. at 27.) After lengthy discussions of potential candidates, the Individual Defendants determined that it was highly unlikely that a credible alternative acquiror would emerge and offer a compelling transaction value without significantly greater execution risk to Bucyrus. (Id.) In addition, the Individual Defendants also discussed the significant disadvantages of an open process for seeking alternative buyers. (Id.) In the face of these deliberations, Plaintiff has alleged no facts to suggest that the Individual Defendants' decision not to shop the Company was

unreasonable, let alone explicable *only* as a product of bad faith. *See In re NYMEX S'holder Litig.*, 2009 WL 3206051, at *2, 7 (dismissing breach of fiduciary duty claims alleging that Board approved the transaction "'without obtaining, soliciting, or attempting to solicit other, higher bids for the Company's shares'").

Plaintiff's claims regarding certain terms in the Merger Agreement—a no-solicitation provision, a matching rights provision, a so-called "poison pill" provision, and a $200 million termination fee—fare no better. Plaintiff conclusorily asserts that these terms collectively "chilled any possibility of a post-signing market check." (SAC ¶¶ 6, 50.) But Plaintiff does not allege any facts supporting this assertion. Moreover, the deal terms about which Plaintiff complains are routine and commonplace, and have been repeatedly upheld by Delaware courts.

As to the "no solicitation" provision, for instance, courts have long held that provisions like the one at issue here are not improper. The no solicitation provision in the Merger Agreement contained a customary "fiduciary out" provision, which permitted the Individual Defendants to furnish information to and participate in discussions or negotiations with a person who made an offer if the Individual Defendants determined in good faith that the offer constituted or was reasonably likely to lead to a superior offer. (*See* Ex. A at A-26.) Delaware courts have recognized the merit of no solicitation provisions in merger agreements provided that—as here—the board retains the ability to consider bona fide better offers. As the Delaware Chancery Court has explained:

> Potential suitors often have a legitimate concern that they are being used merely to draw others into a bidding war. Therefore, in an effort to entice an acquirer to make a strong offer, it is reasonable for a seller to provide a buyer some level of assurance that he will be given adequate opportunity to buy the seller, even if a higher bid later emerges.

14

*In re Cogent, Inc. S'holder Litig.*, 7 A.3d 487, 502 (Del. Ch. 2010); *see also In re Smurfit-Stone Container Corp. S'holder Litig.*, 2011 WL 2028076, at *21 (Del. Ch. May 24, 2011) ("The challenged provisions [(a no-shop provision, matching rights, and termination fee)] are relatively standard in form and have not been shown to be preclusive or coercive, whether they are considered separately or collectively."); *Ace Ltd. v. Capital Re Corp.*, 747 A.2d 95, 106 (Del. Ch. 1999) (no solicitation clauses are "perfectly understandable, if not necessary, if good faith business transactions are to be encouraged"). Simply put, agreeing to a no solicitation provision with a fiduciary out was entirely reasonable and certainly cannot establish bad faith.

Likewise, the inclusion of so-called "matching rights" and "poison pill" provisions are entirely customary in transactions of this type and do not establish any breach of fiduciary duty, much less establish that the Individual Defendants acted in bad faith. Rather, as with the no solicitation clause, Delaware courts have routinely held that such standard and common provisions are permissible. *See, e.g.*, *In re 3Com S'holders Litig.*, 2009 WL 5173804, at *7 (Del. Ch. Dec. 18, 2009) ("plaintiffs complain that the no solicitation provision, the matching rights provision, and the termination fee 'effectively preclude any other bidders who might be interested in paying more than HP for the Company . . . .' But this Court has repeatedly held that provisions such as these are standard merger terms, are not *per se* unreasonable . . . ."); *Moran v. Household Int'l, Inc.*, 500 A.2d 1346, 1353 (Del. 1985) (holding that adoption of a shareholder rights plan (i.e., a "poison pill") is a permissive exercise of a board's business judgment).

The same is true with respect to the $200 million termination fee. "Termination fees are permissible under Delaware law," *In re IXC Commc'ns, Inc. S'holder Litig.*, 1999 WL 1009174, at *10 (Del. Ch. Oct. 27, 1999), and they "are not unusual in corporate sale or merger contexts." *In re Cogent, Inc. S'holder Litig.*, 7 A.3d at 503. They are common merger terms that signal that

the selling company is "credibly committed to selling and, separately, reasonably recognizing [the buyer's] need for adequate compensation if it risked the opportunity costs of tying up [billions of dollars] of capital in pursuit of an acquisition of the Company that might not come to fruition." *In re Toys "R" Us, Inc. S'holder Litig.*, 877 A.2d 975, 1017-18 (Del. Ch. 2005) (also noting "prior judicial precedents which suggested that it would not be unreasonable for the board to grant a substantial termination fee and matching rights to the [buyer] if that was necessary to successfully wring out a high-value bid."). The $200 million termination fee represented less than 2.75% of Bucyrus's total equity value and less than 2.5% of its total enterprise value. A termination fee of this size is well within the threshold recognized as proper under Delaware law. *See, e.g.*, *In re Smurfit-Stone Container Corp. S'holder Litig.*, 2011 WL 2028076, at *21 (noting that "this Court has approved several termination fees of similar size" to a fee representing approximately 3.4% of equity value); *In re Cogent, Inc.*, 7 A.3d at 503 (termination fees are not unusual in corporate sale or merger contexts, $28.3 million fee representing 3% of equity value and 6.6% of enterprise value was not unreasonable, and numerous Delaware cases have found reasonable termination fees of 3% or more of the equity or transaction value of the deal).

In light of Plaintiff's failure to allege that the Individual Defendants included any terms in the Merger Agreement that have been deemed *per se* unreasonable by Delaware courts and its failure to allege any facts indicating that the collective effect of the Merger Agreement's terms foreclosed any bona fide superior offers, Plaintiff's claim based on the deal protection terms is wholly without merit. Plaintiff's allegations are insufficient to establish that the Individual Defendants breached any fiduciary duty in negotiating the terms of the Merger Agreement, let alone that the Individual Defendants' actions were so egregious as to establish bad faith. As such, Plaintiff cannot overcome the protection afforded the Individual Defendants by the

exculpatory provision, and its breach of fiduciary duty claim regarding the alleged foreclosure of other potential bids must fail.

2.      Plaintiff's Allegations Regarding Regulatory Risk Are Not Actionable.

Despite pleading that "the Takeover closed without anti-trust scrutiny" (SAC ¶ 51), Plaintiff nevertheless persists in claiming that the Individual Defendants breached their fiduciary duties by having "failed to secure sufficient protection for the Company's former shareholders in connection with the risk that the Takeover would have drawn regulatory scrutiny."  (Id.)  This claim is nonsensical.  Plaintiff obviously cannot show injury from a "threat" of regulatory intervention that did not actually come to pass.  As such, Plaintiff's claim based on regulatory risk is plainly moot.  *See Energy Partners, Ltd. v. Stone Energy Corp.*, 2006 WL 2947483, at \*6 (Del. Ch. Oct. 11, 2006) ("The 'actual controversy' requirement is the foundation for the mootness doctrine, which provides for dismissal of litigation if the alleged threatened injury no longer exists.").

Furthermore, as the Merger Agreement itself demonstrates, the Individual Defendants in fact secured protections against antitrust regulatory risk, including some of the very provisions that Plaintiff claims should have been negotiated.  *E.g., compare* SAC ¶ 51 ("Specifically, the Board did not secure . . . (ii) an agreement by Caterpillar . . . that would require Caterpillar to divest any of its assets to secure regulatory approval") *with* Ex. A at 62 ("Parent [Caterpillar] has agreed to sell, lease, license, dispose of or hold separate any assets, rights, product lines, licenses or other categories of assets or businesses if such action would be reasonably necessary to avoid any permanent, preliminary or temporary injunction or order that would be reasonably likely to delay or prohibit consummation of the merger.").  The Individual Defendants cannot have breached their fiduciary duties when they, in fact, secured the protections that Plaintiff falsely claims were omitted.

17

3.      Plaintiff's Allegations Regarding the Consideration Paid under the Merger Agreement Are Not Actionable.

Finally, Plaintiff contends that the $92 cash per share was inadequate.  (*See* SAC ¶¶ 8, 52 ("[T]he consideration offered in the Takeover did not adequately reflect the Company's prospects going forward or its synergistic value to Caterpillar as a merger partner.").)  Plaintiff does not specifically allege facts supporting its conclusory allegation that the price the Individual Defendants negotiated was too low, such as allegations that the Individual Defendants left another, better deal on the negotiating table or even that there was another buyer willing to pay more than $92 per share.  Absent such factual allegations, conclusory allegations that the consideration provided for under the Merger Agreement was "inadequate" simply do not establish any breach of fiduciary duty, let alone a claim of bad faith.  *See McMillan v. Intercargo Corp.*, 768 A.2d 492, 502 (Del. Ch. 2000) ("The defendant directors are entitled to dismissal unless the plaintiffs have pled facts that, if true, support the conclusion that the defendant directors failed to secure the highest attainable value as a result of their own bad faith or otherwise disloyal conduct.").

Moreover, Plaintiff's claims of inadequate consideration ring particularly hollow given that neither it nor any other Bucyrus shareholder exercised appraisal rights.  Indeed, the Bucyrus shareholders overwhelmingly voted to approve the Merger:  59,822,881 votes for and 141,808 votes against.

Under section 262 of the Delaware General Corporation Law, a Bucyrus shareholder had the right to choose to forgo the consideration under the terms of a merger agreement and instead receive the fair value of its shares, as determined in an appraisal by the Delaware Chancery Court.  8 Del. C. § 262(a).  However, a shareholder who elects to pursue an appraisal remedy faces certain risks by doing so, including that it may receive less than the merger price in the

appraisal action. *Gilliland v. Motorola, Inc.*, 873 A.2d 305, 312 (Del. Ch. 2005). By electing to take the consideration provided for by the Merger Agreement but still claiming to sue for damages on the basis that this consideration was insufficient, Plaintiff plainly sought to avoid the risk that the Delaware Chancery Court would conclude that the fair value of its Bucyrus stock was *lower* than $92 per share.

For all of the foregoing reasons, Plaintiff's fiduciary duty claims are without substance and must be dismissed.

## II.    PLAINTIFF'S DISCLOSURE CLAIMS FAIL.

Plaintiff also seeks to bring claims for purported disclosure violations, asserting that the Definitive Proxy Statement issued on December 21, 2010 (the "Proxy") was "materially false and misleading" (SAC ¶ 9), and proceeds to set forth a laundry list of information that Plaintiff claims the Individual Defendants should have included in the Proxy but did not. This information falls into three general categories: (1) Bucyrus management's ten-year financial forecasts (SAC ¶¶ 57-60); (2) details about the process by which the Individual Defendants negotiated with Caterpillar (SAC ¶¶ 56, 61-64); and (3) details about the analyses performed by Deutsche Bank and UBS (SAC ¶¶ 65-74).

Plaintiff brings its disclosure claims under both Delaware state fiduciary duty law and federal proxy law. Under Delaware law, directors "'are under a fiduciary duty to disclose fully and fairly all material information within the board's control when it seeks shareholder action,'" including when the directors disseminate proxy statements seeking shareholder votes. *Globis Partners, L.P. v. Plumtree Software, Inc.*, 2007 WL 4292024, at *10 (Del. Ch. Nov. 30, 2007) (quoting *Stroud v. Grace*, 606 A.2d 75, 84 (Del. 1992)). Federal law also imposes disclosure obligations on directors in the context of a proxy solicitation. Under SEC Rule 14a-9, promulgated under § 14(a) of the 1934 Act, a proxy cannot contain false or misleading

statements, including statements rendered false or misleading due to the omission of information necessary to prevent them from being so. 17 C.F.R. § 240.14a-9. As set forth below, Plaintiff has failed to state a claim under either Delaware or federal law, and its disclosure claims must be dismissed.

### A. Plaintiff's Disclosure Claims under State Law Must Be Dismissed Because of Bucyrus's Exculpatory Provision.

In light of the exculpatory provision in Bucyrus's certificate of incorporation, for Plaintiff to state a claim for money damages based on disclosure, Plaintiff is required to establish that the Individual Defendants either breached their duty of loyalty or acted in bad faith in omitting information from the Proxy. Here, as previously discussed, Plaintiff has not set forth any well-pleaded allegations of bad faith or violation of the duty of loyalty, and thus, fails to establish a breach of fiduciary duty based on alleged shortcomings in the Proxy. *See In re NYMEX S'holder Litig.*, 2009 WL 3206051, at *12 ("A mere conclusory allegation that the alleged disclosure violations also constitute a violation of the duty of loyalty is not sufficient to survive a motion to dismiss, particularly in light of the holding that the Complaint fails to otherwise state a non-exculpated claim against the Director Defendants for breach of fiduciary duty.") (internal quotation marks omitted); *see also In re Alloy, Inc*., 2011 WL 4863716, at *14 ("In this case, there is no evidence that, in authorizing the disclosures, the Alloy directors breached their duty of loyalty or acted in bad faith. . . . The exculpatory provision of Alloy's certificate of incorporation, therefore, precludes monetary liability against the Alloy Defendants, which in turn compels dismissal of Plaintiffs' Disclosure Claims."). The state law disclosure claims must be dismissed on this basis alone.

**B.** **Plaintiff's State and Federal Disclosure Claims Must Be Dismissed Because Plaintiff Has Failed to Allege Any Material Omission.**

Under both Delaware and federal law, an alleged misrepresentation or omission must be material in order to be actionable. *See Globis Partners, L.P.*, 2007 WL 4292024, at *10 ("'The essential inquiry is whether the alleged omission or misrepresentation is material.'") (quoting *Arnold v. Soc'y for Sav. Banc*, 650 A.2d 1270, 1277 (Del. 1994)); *Beck v. Dobrowski*, 559 F.3d 680, 684-85 (7th Cir. 2009) (finding no violation of section 14(a) or Rule 14a-9 where there was no evidence of materiality with respect to the alleged misrepresentations or omissions). The standard for materiality is the same under both Delaware and federal law. *See Globis Partners, L.P.*, 2007 WL 4292024, at *10 ("Delaware has adopted the United States Supreme Court's definition of materiality").

In addition, Plaintiff's claims involve omissions, rather than affirmative misstatements. For an omission to be material, a plaintiff must plead facts showing that: (1) it is substantially likely that the omitted information would be sufficiently important to assume "actual significance" in a stockholder's deliberations, and (2) the information which Plaintiff seeks to have disclosed would "significantly alter" the "'total mix' of information" already available to stockholders. *Loudon v. Archer-Daniels-Midland Co.*, 700 A.2d 135, 143 (Del. 1997) (internal citation omitted); *Basic Inc. v. Levinson*, 485 U.S. 224, 231 (1988) ("The Court also explicitly has defined a standard of materiality under the securities laws concluding in the proxy-solicitation context that '[a]n omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote.'") (quoting *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976)). Because "the burden of demonstrating materiality rests with the plaintiffs," *Globis Partners, L.P.*, 2007 WL 4292024, at *10, a plaintiff must allege "why [the omitted facts] meet the materiality standard and how the

omission caused injury." *Skeen v. Jo-Ann Stores, Inc.*, 750 A.2d 1170, 1173 (Del. 2000); *Wayne Cnty. Emps. Ret. Sys. v. Corti*, 954 A.2d 319, 330 (Del. Ch. 2008).

Both Plaintiff's state law and federal disclosure claims fail because Plaintiff has failed to plead adequately that the Proxy contained *material* omissions under the applicable standards. In the proxy solicitation context, "an omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote." *Basic Inc.*, 485 U.S. at 231-32 ("to fulfill the materiality requirement there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available.") (internal quotation marks omitted). As discussed below, Plaintiff has failed to allege sufficiently that any of the information that it claims was improperly omitted from the Proxy was material, and thus, its disclosure claims must fail.

Plaintiff bases its disclosure claim, in part, on the allegation that the Proxy failed to disclose management's ten-year financial forecast. (SAC ¶ 57.) In support of this claim, Plaintiff alleges that disclosure of the forecast was required because disclosure of the forecast would have enabled Bucyrus's shareholders to independently determine the value of Bucyrus's future cash flows and because the Individual Defendants' financial advisors used the forecast in forming their fairness opinions. (*See* SAC ¶¶ 57-59.) Neither rationale states a claim. As the Delaware Supreme Court has held, there is no requirement that management's projections be disclosed simply because they might be helpful in independently determining the company's value. *Skeen v. Jo-Ann Stores, Inc.*, 750 A.2d 1170, 1174 (Del. 2000) (affirming dismissal of disclosure claim based on failure to disclose management's projections, noting "[t]he complaint alleges no facts suggesting that the undisclosed information is inconsistent with, or otherwise

significantly differs from, the disclosed information.  Appellants merely allege that the added information would be helpful in valuing the company.").  Furthermore, directors are not required to disclose management's projections simply because their financial advisor relied on those projections in rendering its fairness opinion.  *See In re Checkfree Corp. S'holders Litig.*, 2007 WL 3262188, at *2 (Del. Ch. Nov. l, 2007) (financial advisors' reliance on undisclosed projections and data did not make proxy misleading or omit a material fact where proxy contained adequate and fair summary of work done by advisors); *In re General Motors (Hughes) S'holder Litig.*, 2005 WL 1089021, at *16 n.143 (Del. Ch. May 4, 2005), *aff'd*, 897 A.2d 162 (Del. 2006) ("[a] disclosure that does not include all financial data needed to make an independent determination of fair value is not . . . *per se* misleading or omitting a material fact.  The fact that the financial advisors may have considered certain non-disclosed information does not alter this analysis.").  In addition to Plaintiff failing to offer any legitimate rationale for requiring disclosure of the projections, as this Court itself concluded in denying the preliminary injunction motions, the "10 year projections as requested by the Plaintiffs would be too speculative to be reliable and, therefore, such projections need not be provided."[8]  (PI Decision Tr. 16:11-13, Jan. 19, 2011 (attached hereto as Exhibit C).)  In sum, Plaintiff has failed to allege facts establishing that management's ten-year projections were material or reliable, and thus, Plaintiff fails to state a disclosure claim based on those projections.

Plaintiff also asserts that the Individual Defendants' alleged failure to include certain details about their decision-making process establishes a disclosure claim.  More specifically, Plaintiff argues (1) that although the Proxy disclosed that Bucyrus and Caterpillar engaged in discussions regarding a potential joint venture during the summer and fall of 2009, it should have

---

[8] Although Plaintiff moved for a preliminary injunction based on the allegations in its Amended Complaint, Plaintiff has set forth no new allegations in its Second Amended Complaint that support a different conclusion.

disclosed more information about those discussions (SAC ¶ 56); (2) that although the Proxy disclosed a potential equity component of the consideration, it should have disclosed more information about that component (id. ¶ 61); (3) that although the Proxy disclosed why the Individual Defendants decided not to shop the Company, it should have disclosed the basis for the cited reason (id. ¶ 62); (4) that although the Proxy disclosed that Caterpillar had taken the position that certain due diligence gathered could have had a significant impact on the merger consideration, it should have disclosed what that due diligence was (id. ¶ 63); and (5) that although the Proxy disclosed that on November 14, 2010, Bucyrus management made presentations regarding financial aspects of the proposal from Caterpillar, it should have disclosed the presentations themselves (id. ¶ 64).

As an initial matter, "why" or "whether" inquiries like those presented by Plaintiff are insufficient to state a disclosure violation claim. *In re Sauer-Danfoss Inc. S'holders Litig.*, 2011 WL 2519210, at *13 (Del. Ch. Apr. 29, 2011) ("A plaintiff does not state a disclosure claim by asking whether or not something happened."); *In re Bear Stearns Litig.*, 870 N.Y.S.2d 709, 738 (N.Y. Sup. Ct. 2008) ("A plaintiff may not make out a disclosure claim merely by 'pos[ing] questions that are not answered in the proxy statement'") (citation omitted). In addition, despite Plaintiff's assertions, a board is not required to provide every single detail of the negotiations that preceded a recommendation to enter into a merger agreement, lest it "bury the shareholders in an avalanche of trivial information." *Solomon v. Armstrong*, 747 A.2d 1098, 1130 (Del. Ch. 1999); *In re GM (Hughes)*, 2005 WL 1089021, at *13 (Del. Ch. May 4, 2005) (same). Indeed, as this Court stated in denying the motions for a preliminary injunction in this litigation:

> The Delaware Chancery Court has held that it is not enough simply to pose questions that are not answered in a Proxy Statement. Challenges to Proxy Statement disclosures must be based on the alleged omission or misrepresentation of a material fact.

> Much of what the Plaintiffs contend are wrong with the materials
> that have been supplied to shareholders in this case simply raises
> issues or questions about the processes of certain decisions made
> by the Board.

(PI Decision Tr. (Ex. C) 16:23-17:1.)[9]  Having done no more than raise questions about the

Individual Defendants' process and request additional details concerning that process that it

would have found helpful, Plaintiff has not adequately pled that the details it claims should have

been in the Proxy were material.  As such, its disclosure claims concerning these details fail.

In its final set of disclosure allegations, Plaintiff sets forth a list of additional pieces of

information regarding Deutsche Bank's and UBS's fairness opinions that it claims the Proxy

should have included.  (*See* SAC ¶¶ 65-74.)  More specifically, Plaintiff seeks the basis each

financial advisor used for the selection of multiples used in its DCF analysis (*see* id. ¶¶ 65, 71);

the selection and exclusion criteria each financial advisor used for its precedent transactions and

publicly traded companies analysis (*see* id. ¶¶ 66, 68, 72, 74); the per-transaction or per-

company detail of the pricing multiples that each financial advisor used for its precedent

transactions analysis and that Deutsche Bank used for its publicly traded companies analysis (*see*

id. ¶¶ 67, 69, 73); and the basis for Deutsche Bank's decision not to analyze LTM EBITDA

multiples in its publicly traded companies analysis (*see* id. ¶ 70).

None of these pleads a claim.  Delaware courts have repeatedly held that a proxy need

provide only "a fair summary of the substantive work performed by the investment bankers upon

whose advice the[] board relied in reaching their recommendation."  *In re Cogent, Inc. S'holder

Litig.*, 7 A.3d at 511; *see also In re Checkfree Corp. S'holders Litig.*, 2007 WL 3262188 at *3

(finding the seven-page summary of the investment banker's analysis sufficient where "the

---

[9] To be sure, the standard for determining whether to issue a preliminary injunction is different from the standard for determining whether to dismiss a claim.  However, the Court's observations on questions of law regarding materiality in rendering its preliminary injunction decision are instructive here.

definitive proxy statement contains an adequate and fair summary of the work Goldman did to

come to its fairness opinion.").  Here, the Proxy provided both the full text of each banker's

written opinion and an eleven-page summary of Deutsche Bank's and UBS's analyses.  Those

lengthy descriptions detail the various sources upon which the financial advisors relied in

reaching their conclusions, notes each of the selected companies and selected transactions that

the financial advisors used, notes the implied multiples used for the selected companies and

selected transactions analyses, and notes the range of terminal value multiples and discount rates

used for the discounted cash flow analysis, among other information.  (Ex. A at 32-43, Annex B-

1, Annex B-2.)  The additional details that Plaintiff alleges should have been disclosed are

simply examples of Plaintiff claiming to want to know more, and clearly do not meet the

materiality standards set forth above.  *See In re Genentech Inc. S'holders Litig.*, 1990 WL 78829,

at *8 (Del. Ch. June 6, 1990) ("the total mix of information would not be affected due to the

breadth of the ranges of values [used by the investment bankers] and the underlying information

on which they are based"); *In re Openlane, Inc. S'holder Litig.*, 2011 WL 4599662, at *14 (Del.

Ch. Sept. 30, 2011) (disclosure of additional details regarding financial advisor's analyses, such

as "identity and financial metrics of the underlying transactions and an explanation that the

multiples disclosed represent the 25th and 75th percentiles" is a level of detail that is "simply not

necessary for the directors to fulfill their duty to provide a 'fair summary.'")  In fact, as noted

above, requiring a board to provide more and more detail—as Plaintiff alleges it must do—

threatens to undermine the very purpose of the proxy statement.  *See Basic Inc.*, 485 U.S. at 231

(noting that setting too low a standard of materiality would "simply [] bury the shareholders in an

avalanche of trivial information—a result that is hardly conducive to informed

decisionmaking.").  Plaintiff's disclosure claim seeking more detail must fail.

**C.** **Plaintiff's State and Federal Disclosure Claims Must Also Be Dismissed Because Plaintiff Has Failed To Properly Allege Damages.**

Finally, as a third separate and independent basis for dismissal, Plaintiff's disclosure claims fail because Plaintiff does not plead facts showing that the alleged omissions caused an actual economic loss. To state a disclosure claim for money damages under either section 14(a) or Delaware law, Plaintiff is required to plead that the disclosure violation caused economic harm. *See Grace v. Rosenstock*, 228 F.3d 40, 46-47 (2d Cir. 2000) (defining "loss causation" as "that the misrepresentations or omissions caused the economic harm" and noting that "both loss causation and transaction causation must be proven in the context of a private action under § 14(a) of the 1934 Act and SEC Rule 14a–9 promulgated thereunder"); *In re Transkaryotic Therapies, Inc*., 954 A.2d 346, 360-61 (Del. Ch. 2008). Plaintiff has alleged no facts showing such economic harm. Instead, it has set forth only conclusory assertions of damage that fail to satisfy the pleading standards set forth in *Twombly*. (*See, e.g.*, SAC ¶ 77 ("As a result of the breach of fiduciary duties of Bucyrus' former Board, including the materially misleading and inadequate Proxy, plaintiff and the Class were damaged.").) Accordingly, its disclosure claims must be dismissed for this reason as well. *See Beck v. Dobrowski*, 559 F.3d at 685 (affirming dismissal of section 14(a) claim, finding "there is no evidence of loss, or indeed of materiality").

**D.** **Without an Adequately Pled Section 14 Claim, Plaintiff's Section 20 Claim Fails.**

A party alleging a violation of Section 20(a) is required to establish a primary securities violation. *766347 Ontario LTD v. Zurich Capital Markets, Inc.*, 249 F. Supp. 2d 974, 983 (N.D. Ill. 2003) (citing *Harrison v. Dean Witter Reynolds, Inc.*, 974 F.2d 873, 881 (7th Cir. 1992)). Here, the alleged "primary securities violation" is that of Section 14(a). (SAC ¶¶ 100-107.) As demonstrated above, Plaintiff has failed to sufficiently plead a claim under Section 14(a), and thus its Section 20 claim must also be dismissed. *Edward J. Goodman Life Income Trust v. Jabil*

*Cir. Inc.*, 594 F.3d 783, 797 (11th Cir. 2010) (dismissing a Section 20(a) claim in light of the dismissal of the Section 14(a) claim).

## III.    PLAINTIFF'S AIDING AND ABETTING CLAIM FAILS.

To state an aiding and abetting claim against Caterpillar, Plaintiff was required to plead both an underlying breach of fiduciary duty by the Individual Defendants, which it has not done, and that (a) Caterpillar engaged in conduct that objectively aided the Individual Defendants in their alleged breach and (b) Caterpillar consciously intended that its actions would yield that breach. In the merger context, an aiding and abetting claim requires at a minimum factual allegations that the buyer improperly influenced, colluded with, or controlled the selling board. The Second Amended Complaint alleges nothing of the sort. Instead, Plaintiff's allegations suggest only arms-length bargaining between sophisticated parties. Accordingly, Plaintiff's aiding and abetting claim must also be dismissed.

Wisconsin courts[10] impose civil liability for aiding and abetting only where the defendant: "(1) undertakes conduct that as a matter of objective fact aids another in the commission of an unlawful act; and (2) consciously desires or intends that his conduct will yield such assistance." *Knox Enters. v. Jetzer*, 2010 WI App 84, ¶ 27, 326 Wis. 2d 266; 787 N.W.2d 60 (Wis. Ct. App. 2010). As set forth above, Plaintiff has failed to state a claim against the Individual Defendants, and thus has not established that Caterpillar aided the Individual

---

[10] This Court applies the choice-of-law rules of Wisconsin to the state law aiding and abetting claim against Caterpillar. *See Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n*, 805 F.2d 663, 681 (7th Cir. 1986) (district courts apply choice-of-law rules of their forum state both to pendent claims and to claims with respect to which jurisdiction is based on diversity of citizenship). "The Wisconsin choice of law methodology applicable to tort cases begins with a presumption that the law of the forum applies unless nonforum contacts are of the greater significance." *Assembly Component Sys. v. Platinum Equity, L.L.C.*, 2010 U.S. Dist. LEXIS 67228, at *17-18 (E.D. Wis. July 7, 2010) (quotations omitted); *see also Sentry Ins. v. Novelty, Inc.*, 2009 U.S. Dist. LEXIS 117650, at *14 (W.D. Wis. Dec. 16, 2009) (same). The Second Amended Complaint does not allege any facts that would suggest that the contacts between Caterpillar and the Individual Defendants were so focused in any other state so as to displace Wisconsin law.

Defendants in the commission of any unlawful act. It has therefore necessarily failed to state an aiding and abetting claim against Caterpillar.

Indeed, the conduct alleged on the part of Caterpillar is that Caterpillar negotiated a deal with the Individual Defendants at arm's-length which yielded a significant premium (32%) to Bucyrus' shareholders and included certain contractual protections. No Wisconsin court has expressly considered whether a claim for aiding and abetting can be stated by such allegations. However, Wisconsin courts, when applying Wisconsin law in the context of corporate disputes, often consider the expertise that Delaware courts have developed in this area. *See, e.g., Notz v. Everett Smith Group, Ltd*., 2009 WI 30, ¶ 35, 764 N.W.2d 904 (Wis. 2009) (recognizing Delaware as "a jurisdiction to which Wisconsin courts often look for guidance on corporate law") (internal quotation omitted).

Delaware courts routinely dismiss aiding and abetting claims based on nothing more than a buyer's arm's-length negotiation of a transaction that a shareholder of the seller alleges to be inadequate. The Delaware Supreme Court requires that an aiding and abetting claim in these circumstances be supported by facts suggesting an improper attempt to induce or influence the selling board, collusion between the buyer and seller, or the buyer's domination and control of the seller's board. *Malpiede v. Townson*, 780 A.2d 1075, 1098 (Del. 2001) (affirming dismissal of aiding and abetting claim on the pleadings where "there is no indication in the amended complaint that [the acquiror] participated in the board's decisions, conspired with the board, or otherwise caused the board to make the decisions at issue"); *Morgan v. Cash*, 2010 Del. Ch. LEXIS 148, at *28 (Del. Ch. July 16, 2010) ("[T]he long-standing rule that arm's-length bargaining is privileged and does not, absent actual collusion and facilitation of fiduciary wrongdoing, constitute aiding and abetting helps to safeguard the market for corporate control by

facilitating the bargaining that is central to the American model of capitalism."); *In re Frederick's of Hollywood, Inc. S'holders Litig.*, 1998 Del. Ch. LEXIS 111, at *13 (Del. Ch. July 9, 1998) (dismissing aiding and abetting claim on the pleadings where "nothing in the complaint suggests complicity of any kind between [acquiror] and the [acquired's] board") (footnote omitted). The Second Amended Complaint alleges none of these things.

Indeed, Judge Stadtmueller recently dismissed an aiding and abetting claim like the one Plaintiff attempts to make here. In *Dixon v. Ladish Co.*, 2011 U.S. Dist. LEXIS 23297 (E.D. Wis. Feb. 22, 2011), the plaintiff attempted to raise an aiding and abetting breach of fiduciary duty claim against an acquiring company based on the inclusion of certain deal-protection terms in the merger agreement at issue in that case, including a no-shop clause and a 4% termination fee. *Id*. at *8. The court dismissed the aiding and abetting claim, stating that "[n]one of these terms are so suspicious as to raise an inference that [the acquiror] knew [the acquired company] or the individual defendants intended to breach any fiduciary duty." *Id*. at *8-9. The court further explained that "Delaware courts have regularly accepted non-solicitation clauses and termination fees, and the implicit reasons for doing so are persuasive" and that the plaintiff had set forth "no further allegations in the complaint that even raise an inference that these terms were otherwise forced upon Ladish in some wrongful manner." *Id*. at *8. Likewise, here, Plaintiff's aiding and abetting claim against Caterpillar is based solely on Caterpillar's negotiation of terms that Delaware courts have regularly accepted. There are no allegations in the Second Amended Complaint that raise an inference that these terms were forced upon Bucyrus in some wrongful manner. The aiding and abetting claim against Caterpillar fails.

## CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that the Court dismiss the Second Amended Complaint with prejudice.

Dated:  January 12, 2012

DANIEL E. CONLEY
ELIZABETH C. PERKINS

/s Elizabeth C. Perkins
QUARLES & BRADY LLP
411 East Wisconsin Avenue
Suite 2040
Milwaukee, WI  53202-4497
414/277-5377
414/978-8977 (fax)
Daniel.conley@quarles.com
Elizabeth.perkins@quarles.com

*Attorneys for Defendants Bucyrus International,*
*Inc., Timothy W. Sullivan, Theodore C. Rogers,*
*Gene E. Little, Robert L. Purdum, Robert C.*
*Scharp, Paul W. Jones, Robert K. Ortberg,*
*Michelle L. Collins and Deepak T. Kapur*


HOWARD A. POLLACK
JOHN L. KIRTLEY

/s Howard A. Pollack
GODFREY & KAHN, S.C.
780 North Water Street
Milwaukee, WI  53202-3590
414/273-3500
414/273-5198 (fax)
hpollack@gklaw.com
jkirtley@gklaw.com

SIDLEY AUSTIN LLP
Walter C. Carlson
James W. Ducayet
Emily A. Caveness
One South Dearborn Street
Chicago, IL  60603
312/853-7000
312/853-7036 (fax)

*Attorneys for Defendants Caterpillar Inc. and*
*Badger Merger Sub, Inc.*

31